## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>**for the use and benefit of**<br>**ROMAN MECHANICAL, INC.** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No.: MJM-23-1118** |
| **LIFECYCLE CONSTRUCTION**<br>**SERVICES, LLC, et al.** | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

United States of America, for the use and benefit of Roman Mechanical, Inc. ("Plaintiff" or "Roman"), brings this action against Lifecycle Construction Services, LLC ("Lifecycle") and The Hanover Insurance Company ("Hanover") (collectively "Defendants") under 28 U.S.C. § 1331 and 40 U.S.C. § 3133, alleging breach of contract, quantum meruit/unjust enrichment, violations of the Miller Act, and violations of the Maryland Prompt Payment Act. *See* Compl. (ECF No. 1). Plaintiff's claims arise out of a 2021 subcontract between Lifecycle, the general contractor, and Roman, the subcontractor, for a construction project for the United States Navy in Annapolis, Maryland.

This matter is before the Court on Defendants' Motion to Dismiss (the "Motion"). ECF No. 23. The Motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R.

105.6 (D. Md. 2023). For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## I.     BACKGROUND

On or about August 12, 2016, the U.S. Navy hired Lifecycle as a general contractor for improvements and construction at the MWR Annapolis Naval Academy Cottages (the "Project"). Compl. ¶ 7. On August 16, 2016, Lifecycle executed a payment bond with Hanover to ensure that all parties supplying labor and materials for the Project would be paid. *Id.* ¶ 8; ECF No. 1-2 (Payment Bond). "On September 10, 2021, Lifecycle subcontracted with [Roman] for Roman to provide HVAC and plumbing work and materials to the Project." Compl. ¶ 9. The base amount of the subcontract agreement (the "Subcontract") was $227,500.00. *Id.* ¶ 10. "During the course of the project, Lifecycle approved change orders in the amount of $9,850.00[,]" bringing the total value of the Subcontract to $237,350.00. *Id.* ¶¶ 11–12. Roman worked on the Project from October 4, 2021, to January 13, 2023, and completed its work in accordance with the Subcontract. *Id.* ¶ 14–15.

Roman alleges that Lifecycle failed to pay $47,892.50 of the $237,350.00 owed to Roman under the Subcontract. *Id.* ¶ 13. Roman also alleges that, due to Lifecycle's mismanagement, it incurred additional delay damages of $170,932.60. *Id.* ¶¶ 17, 22. Thus, Roman's total claimed damages are $218,825.10. *Id.* ¶ 23.

On April 26, 2023, Roman filed its four-count Complaint against Defendants. Count I alleges that Defendants are jointly and severally liable under the payment bond for the balance due of $218,825.10. *Id.* ¶¶ 29–36. Count II alleges that Defendants breached the Subcontract "by failing to timely pay Roman" the balance due. *Id.* ¶¶ 41, 43. Count III alleges, in the alternative to breach of contract, that Roman may recover the balance due under equitable theories of quantum

meruit and unjust enrichment. *Id.* ¶¶ 45, 51, 53. Finally, Count IV alleges that Lifecycle violated the Maryland Prompt Payment Act (the "Act") because "Lifecycle received payment for Roman's materials and labor, but did not timely pay Roman as required by the . . . Act." *Id.* ¶ 62.

## II.    STANDARD OF REVIEW

Under Rule 8(a)(2) of Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*,

825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.    DISCUSSION

In their Motion, Defendants argue: (A) Count IV should be dismissed because the Subcontract's Virginia choice-of-law provision bars Plaintiff's Maryland Prompt Payment Act claim; (B) Count III should be dismissed because Plaintiff cannot recover in equity for claims that are exclusively governed by the terms of the Subcontract; (C) Plaintiff's claims for delay damages in Counts I, II, and III should be dismissed because Plaintiff (1) failed to adhere to the Subcontract's notice provision and (2) waived its delay damages claims; and finally, (D) Hanover should be dismissed from Count II because Plaintiff cannot recover for breach of contract against Hanover under the Miller Act. The Court addresses each of Defendants' arguments in turn.

### A.  Choice of Laws and Maryland Prompt Payment Act (Count IV)

Count IV of the Complaint seeks recovery under Maryland's Prompt Payment Act (the "Act"). Defendants argue that the Subcontract's choice-of-law provision bars Plaintiff from recovering under the Act.

The Act generally provides that a contractor or subcontractor who, pursuant to an express or implied contract, does work or furnishes material for or about a building shall be entitled to payment in accordance with prescribed deadlines. Md. Code Ann., Real Prop. §§ 9-301 & 9-302. Among other things, the Act requires a contractor to pay a subcontractor "undisputed amounts owed to its subcontractors within [seven] days" of receipt of payment for the subcontractors' "work or materials." Md. Code Ann., Real Prop. § 9-302(b)(3). Remedies for payment violations

include equitable relief, interest on the amount owed, reasonable costs, and, in the instance of bad faith, reasonable attorney's fees. *Id.* at § 9-303(b).

It is uncontested that Virginia substantive law governs the parties' contractual rights under the Subcontract.[1] *See* Subcontract (ECF No. 1-3) § 12.1 ("This Agreement shall be governed by the laws of the Commonwealth of Virginia."); ECF No. 39-1 at 5 ("Roman agrees that Virginia substantive law applies to interpreting the Subcontract provisions."). Roman argues, however, that the Act is a fundamental policy of Maryland and, therefore, falls under an exception to Maryland's traditional choice-of-law rules. *Id.* at 5–6. Roman further argues "the choice-of-law clause does not preclude application of the [Act]" as a "consistent, supplemental" remedy. ECF No. 39-1 at 4–5. Finally, Roman argues the Act applies to implied contracts and, therefore, even if the Act does not apply to the Subcontract, "Roman can still recover attorneys' fees and interest under the [Act] under its unjust enrichment count." *Id.* at 7.

The law of the forum state, Maryland, guides this Court's choice-of-law analysis. *See Chattery Int'l, Inc. v. JoLida, Inc.*, Civ. No. WDQ-10-2236, 2012 WL 1454158, at *3 n.10 (D. Md. Apr. 24, 2012) ("Federal courts with supplemental jurisdiction over a state law claim apply the choice of law rules of the forum state."); *Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) ("In a federal question [claim] that incorporates a state law issue, a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise."). For contract claims, Maryland courts apply the rule of *lex loci contractus* to determine what law governs the interpretation and validity of contract provisions. *Key Gov't Fin., Inc. v. E3 Enters. Inc.*, 2 F. Supp. 3d 741, 745 (D. Md. 2014) (quoting *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992)). Under this rule, Maryland courts "apply the law of

---

[1]     Virginia has a similar prompt payment statute governing construction contracts. Va. Code Ann. § 11-4.6 (2023).

the jurisdiction where the contract was made." *Hart*, 611 A.2d at 101; *see also Kramer v. Bally's Park Place*, 535 A.2d 466, 467 (Md. 1988) (applying *lex loci contractus* to a contract containing a New York choice-of-law provision). *Lex loci contractus* also allows contracting parties to agree "to the law which will govern their transaction, even as to an issue going to the validity of the contract." *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 650 A.2d 246, 248 (Md. 1994). Maryland law "has long recognized 'the ability of contracting parties to specify in their contract that the laws of a particular state will apply in any dispute over the validity, construction, or enforceability of the contract, and thereby trump the conflict of law rules that otherwise would be applied.'" *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 469 (4th Cir. 2011) (quoting *Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803 (Md. 2007)).

When a contract contains a choice-of-law provision, Maryland courts apply the Restatement (Second) of Conflict of Laws ("Restatement"), which provides that "[t]he law of the state chosen by the parties to govern their contractual rights will be applied." *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F.Supp.2d 697, 704 (D. Md. 2008) (quoting Restatement § 187(2) (1971)). However, under the "public policy" exception,[2] a choice-of-law provision will not apply if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Three M Enters., Inc. v. Texas D.A.R. Enters., Inc.*, 368 F. Supp. 2d 450, 457 (D. Md. 2005) (quoting *Nat'l Glass, Inc.*, 650 A.2d at 248). Assuming Maryland law would apply absent the choice-of-law provision, the Court must determine: (1) whether the choice-of-law

---

[2]     The Restatement provides for another exception to the general rule: a choice-of-law provision will not apply if the "the chosen state has no substantial relationship to the parties or the transaction . . . ." *Ace Am. Ins. Co.*, 587 F.Supp.2d at 705 (quoting Restatement § 187(2)(a)). Plaintiff does not argue that this exception applies.

provision mandating application of Virginia law runs afoul of a "strong public policy" against its enforcement; and, if it does, (2) whether Maryland has a materially greater interest than Virginia in the determination of Plaintiff's claims. *See Three M. Enters.*, 368 F. Supp. 2d at 457–58.

The first question is whether "Maryland's fundamental public policy requires application of the [Act] to Maryland construction projects." ECF No. 39-1 at 5. "[F]or another state's law to be unenforceable, there must be 'a strong public policy against its enforcement in Maryland.'" *Nat'l Glass, Inc.*, 650 A.2d at 249 (quoting *Bethlehem Steel Corp.*, 498 A.2d at 608). But "not every statutory provision constitutes a fundamental policy of a state." *Kunda*, 671 F.3d at 467 (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 607 (4th Cir. 2004)). "Merely because Maryland law is dissimilar to the law of another jurisdiction does not render the latter contrary to Maryland public policy and thus unenforceable in [Maryland] courts." *Bethlehem Steel Corp.*, 498 A.2d at 608. Maryland courts "have struck down contractual provisions contrary to a fundamental public policy in cases where the related statute contains an express statement that the law is a fundamental public policy, an anti-waiver provision, or similar language of clear legislative intent." *Kunda*, 671 F.3d at 468 (emphasis added).

The Act does not expressly state that it is a fundamental policy or contain an anti-waiver provision.[3] *See* Md. Code Ann., Real Prop. § 9-301, *et seq.* That is, the Act does not suggest that parties are prohibited from agreeing to waive a subcontractor's right to prompt payment under the

---

[3]     Notably, the Virginia analogue to the Act contains an anti-waiver provision. *See* Va. Code Ann. § 11-4.6(B)(2) (2023) ("Any provision in a contract contrary to this section shall be unenforceable.").

Act.[4] Further, nothing in the Act's legislative history indicates that the Maryland General Assembly considered the Act to be a fundamental policy or disapproved of a subcontractor waiving its right to prompt payment under the Act. *But cf. Cunningham v. Feinberg*, 107 A.3d 1194, 1215–16 (Md. 2015) (holding Maryland Wage Payment and Collection Law to be a fundamental policy based on the statute's express language, existing case law, and legislative history, which demonstrate strong public policy prohibiting employees from "contract[ing] away their right to be compensated for their work"); *Three M Enters.*, 386 F. Supp. 2d at 457–58 (holding Maryland Franchise Registration and Disclosure Law ("MFRDL") to be a fundamental policy of Maryland based on anti-waiver provision and statement of legislative intent, which "suggest[ed] a strong public policy in favor of civil enforcement of the [MFRDL]").

Thus, the Subcontract's choice-of-law provision does not run afoul of any "strong public policy" in Maryland. The Court need not determine whether Maryland has a materially greater interest in the determination of the issues. Because the parties' agreed that the Subcontract would be governed by Virginia law, Plaintiff cannot recover under Maryland's Prompt Payment Act based on the public policy exception.

Roman also argues that the Act applies to its claims because the Subcontract does not preclude application of a "consistent, extracontractual statutory remed[y]" like the Act. ECF No. 39-1 at 5.[5] Roman argues that Subcontract §§ 8.2.8, 8.4, & 11.6 are consistent with the

---

[4]     Roman argues that the Act is a fundamental policy of Maryland because it "is included in the Mechanic's Lien Title of the Maryland Code[,]" and the "Maryland Supreme Court has decided that waiver of lien provisions . . . violate Maryland's fundamental policy." ECF No. 39-1 at 6 (citing *Nat'l Glass, Inc.*, 650 A.2d at 250). This argument is unavailing. The Maryland Supreme Court held that a specific section of the Mechanic's Lien Title was a fundamental policy of Maryland. *Nat'l Glass, Inc.*, 650 A.2d at 250. That section, § 9-113, is not at issue in this case. Further, unlike the Act, § 9-113 contains an anti-waiver provision. The fact that the two provisions are codified in the same title of the Maryland Code is not dispositive.

[5]     The only case Plaintiff cites in support of this argument is *Nat'l Glass*, which was decided based on the public policy exception. 650 A.2d at 249–50.

requirements of, and damages provided by, the Act. *Id.* at 4. Roman further argues the Subcontract

contemplates the possibility of "other legal remedies . . . ." *Id.* at 4–5. Specifically, Roman relies

upon Subcontract § 8.2.9, which provides:

> [I]f the Contractor has failed to pay the Subcontractor within a
> reasonable time for the Subcontract Work satisfactorily performed,
> the Subcontractor, upon giving seven (7) days' written notice to the
> Contractor, and **without prejudice to and in addition to any other**
> **legal remedies**, may stop work until payment of the full amount
> owing to the Subcontractor has been received.

(Emphasis added).

As discussed above, the Subcontract contains a choice-of-law provision stating that the

Subcontract "shall be governed by the laws of . . . Virginia." *Id.* § 12.1. Thus, Plaintiff's ability to

recover for Lifecycle's failure to make prompt payment on the Subcontract is determined by

Virginia law and limited to remedies available under Virginia law. *See, e.g.*, *Elderberry of Weber*

*City, LLC v. Living Centers-Southeast, Inc.*, 794 F.3d 406, 412 (4th Cir. 2015) (holding that

"parties to a contract may provide the remedy that will be available to them in case a breach occurs"

and that "the intent of the parties as expressed in their contract controls") (internal quotation marks

omitted) (quoting *Bender-Miller Co. v. Thomwood Farms, Inc.*, 179 S.E.2d 636, 638–39) (Va.

1971)). The remedies available under the Act, a Maryland statute, do not apply to the Subcontract.

As Plaintiff recognizes, however, the Act applies not only to express contracts, but also to

implied contracts. *See* Md. Code Ann., Real Prop. § 9-301(b)(1) (provision defining "[c]ontract"

as "an agreement of any kind or nature, **express or implied**, for doing work or furnishing materials,

or both, for or about a building") (emphasis added). In this case, as discussed in Part III.B, *infra*,

Plaintiff adequately pleads—in the alternative to its breach-of-contract claim—a claim for

quantum meruit based on an implied contract. Specifically, Plaintiff alleges that, insofar as its

entitlement to payment for labor and materials is not covered by an express contract, it had an

implied contract with Lifecycle under which it is entitled to payment. *See* Compl. ¶¶ 45–53. Thus, to the extent Plaintiff was entitled to payment for labor and materials based on an implied-in-fact contract with Lifecycle, rather than an express contract, Plaintiff has stated a plausible claim for relief under the Act.

Accordingly, Defendants' Motion will be denied as to Plaintiff's claim for relief under the Act based on Lifecycle's failure to make prompt payment on an implied-in-fact contract with Plaintiff. However, Plaintiff's claim for relief under the Act based on Lifecycle's failure to make prompt payment on the Subcontract is dismissed because the Subcontract, by its own terms, is governed by Virginia law.

### B. Quantum Meruit/Unjust Enrichment (Count III)

Count III of the Complaint seeks, in the alternative to breach of contract, recovery for quantum meruit and unjust enrichment. Defendants argue that, because the Complaint "recognizes the existence of signed, written, express contracts," Roman cannot recover in equity. ECF No. 24 at 5.

Quantum meruit and unjust enrichment are "equitable doctrine[s] premised on the notion that one who benefits from the labor of another should not be unjustly enriched." *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Cap. Corp.*, 961 F.2d 489, 490–91 (4th Cir. 1992).

> Maryland law[6] distinguishes between two types of quantum meruit claims, one based on an implied-in-fact contract (usually designated as quantum meruit) and the other based on an implied-in[-]law contract (usually designated as unjust enrichment). One of the primary differences between the two claims is the proper measure of damages. Unjust enrichment is measured by the gain bestowed

---

[6]    Following the choice-of-law rules discussed above, any implied contract between Roman and Lifecycle "would have arisen in the state where the parties reached a mutual agreement, presumably in Maryland." *Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp. 2d 505, 518 (D. Md. 2004).

> on the defendant, while quantum meruit is measured by the
> reasonable value of the work performed by the plaintiff.

*Sanders v. Mueller*, 133 F. App'x 37, 42 (4th Cir. 2005) (citing *Mogavero v. Silverstein*, 790 A.2d

43, 52–53 (Md. Ct. Spec. App. 2002)); *see also Alternatives Unlimited, Inc. v. New Baltimore City

Bd. of Sch. Comm'rs*, 843 A.2d 252, 292 (Md. Ct. Spec. App. 2004) ("[Q]uantum meruit was the

common law count or form of action which allowed recovery where the plaintiff had performed

services for the defendant, whether the services were provided at the defendant's request, on a

theory of implied-in-fact contract, or without the defendant's request but benefitting him in some

way [i.e. implied-in-law].") (citation omitted).

"Under Maryland law, an express contract prevents a claim for unjust enrichment or

quantum meruit based on the subject matter of that express contract." *Dunnaville v. McCormick

& Co*., 21 F. Supp. 2d 527, 535 (D. Md. 1998). At the pleadings stage, however, a plaintiff may

state a claim for quantum meruit or unjust enrichment in the alternative to a claim based on an

express contract, in the event that the express contract is deemed invalid or unenforceable. *See*

Fed. R. Civ. P. 8(d)(2) ("A party may set out [two] or more statements of a claim . . . alternatively

or hypothetically, either in a single count . . . or in separate ones. If a party makes alternative

statements, the pleading is sufficient if any one of them is sufficient."); *CDC-LCGH, LLC v.

Mayor*, 313 F. App'x 637, 641–42 (4th Cir. 2009) (recognizing that the plaintiff could plead

contract claims and quasi-contract claims in the alternative, but affirming dismissal of unjust

enrichment claim on summary judgment where a valid contract existed).

At this stage, Plaintiff has alleged facts that the costs it incurred at Lifecycle's request and

for its benefit may fall outside the scope of an express contract. These facts are sufficient to sustain

Plaintiff's alternative claim for equitable relief. The Subcontract does specifically contemplate

delay damages and change orders. *See* Subcontract § 5.3.3 ("Nothing in this Article shall preclude

the Subcontractor's recovery of delay damages caused by the **Contractor** to the extent not otherwise precluded by this Agreement.") (emphasis in original); § 7.1–7.2 (providing that Roman shall make changes when Lifecycle orders such changes in writing). However, the Complaint alleges, at Lifecycle's request, Roman provided labor and equipment that may fall outside the scope of the Subcontract. *See* Compl. ¶ 47 ("Even if no express contract is found to exist as to some or all of the . . . labor and equipment that Roman supplied to Lifecycle on the Project, said work was furnished at the request of Lifecycle and conferred a benefit on Lifecycle."). The Complaint further alleges Roman was not compensated for labor and equipment that fell outside the scope of the Subcontract. *Id.* ¶ 51 ("The reasonable value of the labor and materials Roman supplied to Lifecycle [for] which it has not been paid is $218,825.10."). In the absence of an express contract, Roman may recover on a theory of quantum meruit or unjust enrichment. *See Dunnaville*, 21 F. Supp. 2d at 535.

Accordingly, Defendants' Motion will be denied as to Count III.[7]

## C.  Notice and Waiver of Delay Damages (Counts I, II, & III)

Plaintiff claims $170,932.60 in delay damages. Compl. ¶ 22; ECF No. 1-7 at 4. Defendants argue, however, that Plaintiff's claim for delay damages should be dismissed because Plaintiff failed to comply with notice requirements in the Subcontract. ECF No. 24 at 6–7. Defendants further argue that Plaintiff's Applications and Certificates for Payment ("Applications")—attached to the Complaint as Exhibits 3 and 4 (ECF Nos. 1-4 & 1-5)—include waivers that unconditionally

---

[7]    Because Count III will not be dismissed, the Court need not address Plaintiff's argument that it can recover in equity "against Defendant Hanover, the Miller Act surety, regardless of whether [it] can recover" in equity against Defendant Lifecycle. ECF No. 39-1 at 9. *See United States v. Hartford Accident & Indem. Co.*, 168 F.Supp.3d 824, 831–32 (D. Md. 2016) (discussing extent of Miller Act surety's liability in federal contract cases).

release Defendants from all claims for delay damages. ECF No. 24 at 8; ECF No. 40 at 16. The Court will address each of these arguments in turn.

    1.  <u>Notice Provision</u>

The Subcontract provides, in relevant part, that Roman must provide written notice of all claims against Lifecycle "within seven (7) days of [Roman's] knowledge of the facts giving rise to the event for which claim [*sic*] is made." Subcontract § 5.3.4. Thereafter, "[a]ll unresolved claims . . . shall be resolved in the manner provided in Article 11." *Id.* Article 11 provides, in relevant part:

> If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions between the parties' representatives. . . . If the parties' representatives are not able to promptly settle the dispute, the senior executives of the parties . . . shall meet within twenty-one (21) days after the dispute first arises. If the dispute is not settled within seven (7) days from the referral of the dispute to the senior executives, the parties shall submit the dispute to mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to binding dispute resolution.

*Id.* § 11.1.

Exhibit 6 (ECF No. 1-7) of the Complaint—a "Notice of Delay" that Roman submitted to Lifecycle for payment—reflects that Roman provided Lifecycle with notice of delay damages on June 22, 2022. Defendants argue, based on §§ 5.3.4 and 11.1, Plaintiff's delay damages incurred more than seven days prior to June 22, 2022, must be dismissed because Plaintiff failed to provide notice in accordance with the Subcontract. ECF No. 24 at 6.[8]

---

[8]    It is unclear why Defendants challenge the delays allegedly incurred on June 10 through 17, but not those incurred on June 6 and 9, 2022. *See* ECF No. 1-7 at 3–4.

Courts applying Virginia law[9] enforce notice provisions in contracts where they constitute "conditions precedent" to recovery in litigation. *See, e.g.*, *Fluor Fed. Sols., LLC v. BAE Sys. Ordnance Sys., Inc.*, Civ. No. 7:19-00698, 2021 WL 960645, at *4 (W.D. Va. Mar. 15, 2021). The appropriate remedy is to dismiss the action if parties to the suit "elected not to be subject to a court's jurisdiction until some condition precedent is satisfied . . . ." *Id.*

Although the law generally does not favor conditions precedent, courts "may certainly construe a contract as conditional if its plain language compels us to do so." *Standefer v. Thompson*, 939 F.2d 161, 164 (1991). To determine whether a notice provision constitutes "a condition precedent or a mere promise, general rules of contract interpretation govern, and 'the plain meaning of the contract controls.'" *Fluor Fed. Sols.*, 2021 WL 960645, at *4 (quoting *Appalachian Power Co. v. Wagman Heavy Civil, Inc.*, Civ. No. 6:19-00051, 2019 WL 6188303, at *4 (W.D. Va. Nov. 20, 2019)). "While no specific words are necessary to create a condition," courts may consider whether the contractual provision contains words that "traditionally indicate conditions." *Appalachian Power Co.*, 2019 WL 6188303, at *4 (quoting *Standefer*, 939 F.2d at 164). Courts have also considered whether the relevant section contains "an express bar to recovery" if the condition is not satisfied. *ARCO/Murray Nat'l Constr. Co., Inc. v. Owl Creek Energy, LLC*, Civ. No. 21-00346, 2023 WL 112760, at *7–8 (E.D. Va. Jan. 5, 2023); *see also Fluor Fed. Sols.*, 2021 WL 960645, at *5 (denying motion to dismiss where "the subcontract does not state that failure to provide notice requires dismissal of any subsequent litigation").[10]

---

[9]     As discussed in Part III.A, *supra*, the Subcontract includes a Virginia choice-of-law provision. Subcontract § 12.1.

[10]     Virginia courts, however, have not categorically adopted a rule that an "express bar" is required to establish a condition precedent. *See ARCO/Murray*, 2023 WL 112760, at *7.

In this case, neither § 5.3.4 nor § 11.1 contain an "express bar to recovery if notice was not given." *ARCO/Murray*, 2023 WL 112760, at *7. That is, the language of those contractual provisions does not expressly provide that failure to provide notice will bar any subsequent claims in litigation. *Cf. United States v. Centex Const. Co.*, 638 F. Supp. 411, 412 (W.D. Va. 1985) (barring claims where contract provided that "[n]o claims for such damage shall be valid unless the Subcontractor complies with" seven-day notice provision). Thus, any failure by Plaintiff to provide notice as contemplated in Subcontract § 5.3.4 does not preclude it from asserting claims arising from the Subcontract in litigation.

### 2.  Waiver

Defendants further argue that Roman's Applications include waivers that unconditionally release Defendants from all claims for delay damages. ECF No. 24 at 8; ECF No. 40 at 16.

Under Virginia law, "waiver is an intentional relinquishment of a known right." *Stanley's Cafeteria, Inc. v. Abramson*, 306 S.E.2d 870, 873 (Va. 1983). Waiver consists of two elements: (1) "knowledge of the facts basic to the exercise of the right" and (2) "the intent to relinquish that right." *Va. Polytechnic Inst. and State Univ. v. Interactive Return Serv., Inc.*, 595 S.E.2d 1, 6 (Va. 2004). "The focus of the waiver inquiry is upon intent to relinquish." *Abramson*, 306 S.E.2d at 873. "[T]he burden rests on the party relying on a waiver . . . to prove the essentials of such waiver . . . by clear, precise and unequivocal evidence." *Utica Mut. Ins. Co. v. Nat'l Indem. Co.*, 173 S.E.2d 855, 858 (Va. 1970).

"[T]he general rule is that an agreement to waive or release a [] lien must be supported by consideration to be valid and binding." *United Masonry Inc. of Va. v. Riggs Nat'l Bank of Washington, D.C.*, 357 S.E.2d 509, 513 (Va. 1987). Sufficient consideration exists if "the promisee is induced by the waiver to do something that he is not legally bound to do or refrains from doing

anything he has a legal right to do, or if the promisee acts in reliance upon the waiver to his detriment." *Id.* at 513–14. Sufficient consideration also exists if the waiver "required in the original subcontract . . . is supported by the consideration that supports the subcontract." *Mil. & Fed. Constr. Co., Inc. v. Ace Elec., Inc.*, Civ. No. 14-23, 2015 WL 3953814, at *5 (E.D.N.C. June 29, 2015).

In this case, the Application waivers provide:

> FOR AND IN CONSIDERATION of the below-referenced payment and other valuable consideration, the undersigned on behalf of [Roman] does hereby fully and finally WAIVE and RELEASE any and all [claims] against [Lifecycle] . . . including, without limitation, any lien or payment or performance bond claim with respect to all labor, materials, equipment, or any other services provided to the Project.
>
> THIS WAIVER AND RELEASE IS for any and all labor, materials, equipment, and/or services provided on the Project upon receipt of total payment . . . .

Exh. 4 (ECF No. 1-5) at 3.[11]

Critically, the release of claims is contingent upon receipt of payment. Exh. 3 (ECF No. 1-4) at 3; Exh. 4 (ECF No. 1-5) at 3.[12] The Complaint alleges that Lifecycle failed to pay Roman the amount required by the waiver provision in the Applications. Specifically, Plaintiff alleges that the balance "due and owing to Roman for the base Subcontract and change orders [is] $47,892.50," the sum of the amounts claimed to be due in the Applications. Compl. ¶ 13; *see also* ECF No. 1-4

---

[11]     The release in Exhibit 3 is substantially similar, except that it includes the "Release Date" as the date on which the waiver was signed. ECF No. 1-4 at 3.

[12]     This case is easily distinguishable from *VNB Mortg. Corp. v. Lone Star Industries, Inc.*, 209 S.E.2d 909 (Va. 1974), cited by Defendants. In that case, the initial construction contract included a waiver in which the contractor agreed not to file a mechanic's lien. *Id.* at 911. The waiver in that case, therefore, was specifically "given in anticipation of the possibility of nonpayment." *Id.* at 912. Conversely, in this case, the waivers state that they are provided "upon receipt of total payment." ECF No. 1-5 at 3.

at 1 (requesting $24,840.00); ECF No. 1-5 at 1 (requesting $23,052.50). Thus, drawing reasonable inferences in Plaintiff's favor, the waivers were not supported by adequate consideration.

Accordingly, the Motion will be denied as to the delay damages claimed in Counts I, II, & III.

### D. Breach of Contract against Hanover (Count II)

Count II of the Complaint alleges that Hanover is jointly and severally liable for Lifecycle's breach of the Subcontract. Compl. at 6; *see also* ECF No. 1-2 (Payment Bond between Lifecycle and Hanover). Defendants move to dismiss Roman's breach of contract claim against Hanover. ECF No. 24 at 8. Defendants argue that, under the Miller Act, Roman's only eligible means of recovery against Hanover is an action on the payment bond, which is asserted in Count I. *Id.*; ECF No. 40 at 18–19.

"Because subcontractors may not impose a lien on government-owned property, the Miller Act ensures that they can recover for materials and labor contributed to public projects." *Consol. Elec. & Mechanicals, Inc. v. Biggs Gen. Contracting, Inc.*, 167 F.3d 432, 434 (8th Cir. 1999). The Miller Act provides that a subcontractor "may bring a civil action on the payment bond for the amount unpaid" under the contract. 40 U.S.C. § 3133(b)(1). As the Eighth Circuit explained:

> A surety's liability under the Miller Act is measured by the general contractor's liability under the construction contract. . . . Claims brought under the Miller Act, however, are federal causes of action and are separate and distinct from state law breach of contract actions. . . . Therefore, a subcontractor must specifically plead a breach of contract claim under state law in addition to raising a Miller Act claim if it wishes to recover damages under a contract theory.

*Consol. Elec.*, 167 F.3d at 434. The question in this case, however, is the appropriate party against which Roman must bring its independent state law breach of contract claim.

Federal courts have recognized that "the Miller Act is the exclusive remedy for actions on the payment bond," but "does not preclude a subcontractor from pursuing other remedies available to it under state law . . . ." *U.S. ex rel. Walter Toebe Const. Co. v. Guarantee Co. of N. Am.*, 66 F. Supp. 3d 925, 932 (E.D. Mich. 2014) (citations omitted). In a surety bond context, "[w]here a surety's liability for the principal's obligation has been established, the surety is liable for the whole debt." *Bd. of Sup'rs of Fairfax Cnty. v. S. Cross Coal Corp.*, 380 S.E.2d 636, 639 (Va. 1989) (citation omitted). "The surety's liability to the obligee is measured by that of the principal; the liability of both is primary." *Id.* "Moreover, a surety, defending an obligee's suit on the principal's bonded obligation, stands in the principal's shoes and may assert only those defenses available to the principal." *Id.*; *see also United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 832 (D. Md. 2016) (finding that "a surety occupies the shoes of its principal"). Indeed, the surety may "avail itself of most contract defenses, including the doctrines of release and waiver." *Hartford Accident*, 168 F. Supp. 3d at 832. The Ninth Circuit has specifically rejected the argument "that Congress intended the [Miller] Act to protect sureties from liability for torts or other violations of state laws or regulations that they may commit in connection with payment bonds executed pursuant to the Act." *K-W Indus., a Div. of Assocs. Techs., Ltd. v. Nat'l Sur. Corp.*, 855 F.2d 640, 643 (9th Cir. 1988); *see also U.S. ex rel. Walter Toebe Const. Co. v. Guarantee Co. of N. Am.*, 66 F. Supp. 3d 925, 933 (E.D. Mich. 2014).

As surety, Hanover occupies the shoes of Lifecyle and, under Virginia law, may be liable for Lifecycle's breaches of the Subcontract. Defendants do not cite any authority to suggest that the Miller Act insulates a surety against state law claims. Accordingly, Defendants' motion to dismiss the claim against Hanover in Count II will be denied.

## IV.    ORDER

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for relief under the Maryland Prompt Payment Act in Count IV based on Lifecycle's alleged failure to make prompt payment under the Subcontract will be dismissed. However, Plaintiff's claim for relief under the Act in Count IV based on a theory of implied-in-fact contract will be sustained. Defendants' Motion will be DENIED as to Counts I, II, and III.

It is so ORDERED.

 6/26/24 
Date

Matthew J. Maddox
United States District Judge